UNITED STATES DISTRICT COURT for the
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------------X

JACK ARGILA, in his fiduciary capacity as a Trustee for the    :
POINTERS, CLEANERS & CAULKERS WELFARE,    :
PENSION & ANNUITY FUNDS, the BRICKLAYERS JOINT    :
APPRENTICE TRAINING FUND, the LABOR    :
MANAGEMENT FUND, and the PROMOTION FUND;    :    **COMPLAINT**
and as President of the BRICKLAYERS AND ALLIED    :
CRAFTWORKERS LOCAL UNION NO. 1, B.A.C.I.U.,    :
AFL-CIO; and the TRUSTEES of the BRICKLAYERS AND    :
TROWEL TRADES INTERNATIONAL PENSION FUND and    :
the INTERNATIONAL MASONRY INSTITUTE,    :    23-CV-6725
    :
    Plaintiffs,    :
    :
    -against-    :
    :
P&K CONTRACTING, INC.; RAJENDRA PATEL;    :
PHILADELPHIA INDEMNITY INSURANCE COMPANY;    :
DOE GENERAL CONTRACTOR; and DOE SURETY    :
COMPANY,    :
    :
    Defendants.    :

------------------------------------------------------------------------------X

Plaintiffs, by their attorneys, HOLM & O'HARA LLP, as and for their Complaint against the Defendants, allege the following:

## NATURE OF ACTION

1.    This is an action arising under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, et seq., the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141, et seq., the New York Lien Law, N.Y. Lien L. § 70, et seq. and common law.

## JURISDICTION AND VENUE

2.    Jurisdiction over the causes of action alleged herein is conferred upon this Court by 28 U.S.C. §§ 1331 and 1337; by 29 U.S.C. §§ 185(c), 1109(a), 1132(a)(2), 1132(a)(3),

1132(d), 1132(e)(1) and 1132(f).

3.    Venue is properly placed in the Eastern District of New York under 29 U.S.C. §§ 185(a) and 1132(e)(2) in that the subject plans are administered and maintain their principal office in the County of Queens, New York, and Bricklayer and Allied Craftworkers Local Union No. 1 has its principal place of business in the County of Queens, New York.

## PARTIES

4.    Plaintiffs, Pointers, Cleaners & Caulkers Welfare, Pension & Annuity Funds and Bricklayers Joint Apprentice Training Funds ("PCC Funds") are jointly trusteed multiemployer plans established pursuant to a collective bargaining agreement and by trust indentures. The PCC Funds are employee benefit plans within the meaning of 29 U.S.C. §§ 1002(2), (3), and 1132(d)(l) and multiemployer plans within the meaning of 29 U.S.C. §§ 1002(37) and 1145. The PCC Funds are the administrator of all of the ERISA Plans and the Non-ERISA Plans (the "Plans"). Under the collective bargaining agreements, signatory employers, including the defendant company, are required to remit the required contributions, as well as summaries of their payroll records. The PCC Funds are authorized to maintain suit as an independent legal entity under 29 U.S.C. § 1132(d)(l). The PCC Funds are administered and maintain an office located at 66-05 Woodhaven Boulevard, Rego Park, New York 11374.

5.    In addition, the PCC Funds collect assessments from certain employees covered by the collective bargaining agreements who authorize their employers to deduct from their wages union dues and assessments due to the union ("Union Amounts").

6.    The PCC Funds also collect, in accordance with the collective bargaining agreements, contributions due to the following non-ERISA plans: the Labor Management Relations Fund and the Promotion Fund ("non-ERISA Plans"). Together, the Union Amounts and

the amounts owed to the non-ERISA Plans are referred to as the "Non-ERISA contributions." The contributions to the ERISA Plans and the non-ERISA contributions are collectively referred to as "Contributions."

7.     Plaintiff, Bricklayers & Trowel Trades International Pension Fund ("IPF") by its employer and employee representatives and Trustees, Timothy Driscoll, Robert Arnold, Carlos Aquin, Jeremiah Sullivan, Jr., Gerard Scarano, Gerald O'Malley, Henry Kramer, Gregory Hess, Matthew Aquiline, William McConnell, Robert Hoover, John Trendell, and Anthony Marra (hereinafter the "International IPF Trustees") is a multi-employer, labor-management trust fund, organized and operated pursuant to various collective bargaining agreements in accordance with 29 U.S.C. § 186(c)(5). The IPF is an employee benefit plan within the meaning of 29 U.S.C. §§ 1002(2), (3), and 1132(d)(l) and multiemployer plans within the meaning of 29 U.S.C. §§ 1002(37) and 1145. The Trustees of the IPF, in their respective capacities as fiduciaries, bring this action on behalf of, and for the benefit of, the participants and beneficiaries of the IPF. The IPF is administered and maintained at its office located at 620 F Street, NW, 9th Floor, Washington, DC 20004.

8.     The IPF is also authorized to effect collections on behalf of the plaintiff International Masonry Institute ("IMI") pursuant to a written Assignment of Claims and the *Collection Procedures of the Central Collection Unit of the Bricklayers and Allied Craftworkers* ("Collection Procedures").

9.     Plaintiff, IMI, by its employer and employee representatives and Trustees, Jack Argila, Jim Allen, Matthew Aquiline, Carlos Aquin, Ted Champ, Robert Arnold, John Capo, Ted Champ, Tommy Conner,  Timothy Driscoll, Gregory Hess, Robert Hoover, David Jackson, Fred Kinateder, Jr.,  Brian Jennewein, Ken Kudela, Chuck Kukawka, Richard Lauber, Jr.,  Dan

Kwiatkowski, William McConnell, Tim Miller, Jim O'Connor, Dennis Pagliotti, Charles Raso, Michael Schmerbeck, Jeremiah P. Sullivan, Jr., and John Trendell (hereinafter the "International IMI Trustees"), is a multi-employer, labor-management trust fund, organized and operated pursuant to various collective bargaining agreements in accordance with 29 U.S.C. § 186(c)(5). The IMI is an employee benefit plan within the meaning of 29 U.S.C. §§ 1002(2), 1002(3), and 1132(d)(l) and multiemployer plan within the meaning of 29 U.S.C. §§ 1002(37) and 1145. The Trustees of the IMI, in their respective capacities as fiduciaries, bring this action on behalf of, and for the benefit of, the beneficiaries of the IMI. The IMI is administered and maintained at its office located at 620 F Street, NW, 9th Floor, Washington, DC 20004.

10.    Plaintiff Bricklayers and Allied Craftworkers Local Union No. 1, B.A.C.I.U., AFL-CIO ("LOCAL 1") is a voluntary association under the laws of the State of New York and is a "labor organization" within the meaning of 29 U.S.C. § 185, representing employees in an "industry affecting commerce" as defined in 29 U.S.C. § 142(1) and 29 U.S.C. § 1002(12). LOCAL 1's membership includes the pointing, cleaning and caulking trade and the bricklaying trade. LOCAL 1 maintains offices located at 4 Court Square, Long Island City, New York 11101.

11.    Plaintiff Jack Argila is a Trustee of the PCC Funds and President of LOCAL 1 and this lawsuit is brought in his capacity and in the Board of Trustees of the IPF FUND's and IMI FUND's (collectively "INTERNATIONAL FUNDS") capacity as fiduciaries of their respective funds within the meaning of ERISA 29 U.S.C. §1002 (21).

12.    Defendant P&K Contracting, Inc. ("P&K") was, at all times relevant to this action, upon information and belief, a domestic corporation organized under, and existing by virtue of, the laws of the State of New York, with its offices and principal places of business located at 1645 Jericho Turnpike, Suite B, New Hyde Park, New York 11040.

13. Upon information and belief, P&K was an "employer," within the meaning of 29 U.S.C. §§ 1002(5) and 1145 at all times relevant to this action and is engaged in the construction business, which qualifies P&K as an "employer engaged in an industry affecting commerce," within the meaning of 29 U.S.C. § 185.

14. Upon information and belief, P&K was a "trustee," with respect to monies received in connection with contracts for improvement of real property, within the meaning of Article 3-A of the New York Lien Law, N.Y. Lien L. §§ 70(1), 71.

15. Defendant, Rajendra Patel ("PATEL"), a natural person, has been, at all material times relevant to this action, the President of P&K and the last known addresses for PATEL are 1645 Jericho Turnpike, Suite B, New Hyde Park, NY 11040 and 199 Zabriskie Street, Jersey City, New Jersey 07307.

16. Upon information and belief, PATEL was an "employer," within the meaning of 29 U.S.C. §§ 1002(5) and 1145 at all times relevant to this action and is engaged in the construction business which qualifies PATEL as an "employer engaged in an industry affecting commerce," within the meaning of 29 U.S.C. § 185.

17. Upon information and belief, defendant PATEL is a "fiduciary," with respect to the PCC Funds, within the meaning of ERISA, 29 U.S.C. § 1002(21)(A).

18. Upon information and belief, PATEL exercised authority or control with respect to the management or disposition of plan assets that should have been held in trust by P&K and remitted to the PCC Funds and INTERNATIONAL FUNDS (collectively, "FUNDS").

19. Upon information and belief, PATEL exercised unauthorized dominion or control with respect to the management or disposition of union dues and assessments (collectively, "dues and assessments") that should have been held in trust by P&K and remitted to LOCAL 1, in

a manner that interfered with LOCAL 1's legal title or superior right of possession of said dues and assessments.

20.    At all relevant times herein, defendant Philadelphia Indemnity Insurance Company ("PIIC") was and is an insurance company duly authorized and licensed to issue insurance policies in the State of New York by the Insurance Department of the State of New York.

21.    At all relevant times herein, Defendant Doe General Contractor ("DOE CONTRACTOR" was and is a business authorized to do business in New York.

22.    At all relevant times herein, defendant Doe Surety Company ("DOE SURETY") was and is an insurance company duly authorized and licensed to issue insurance policies in the State of New York by the Insurance Department of the State of New York.

## PRELIMINARY STATEMENT

23.    P&K is bound to the Project Labor Agreement Covering Specified Renovation & Rehabilitation of New York City Housing Authority ("NYCHA") Buildings and Structures (the "PLA").

24.    The PLA Letter of Assent states that "the terms of the PLA, its schedules, Addenda and Exhibits are hereby incorporated by reference herein."

25.    The PLA Letter of Assent states that the employer "[a]grees to be bound by the legally established collective bargaining agreements and local trust agreements as set forth in the [PLA] and [Letter of Assent] but only to the extent of Program Work and as required by the PLA."

26.    The PLA Letter of Assent states that the employer "[a]uthorizes the parties to such local trust agreements to appoint trustees and successor trustees to administer the trust

funds and hereby ratifies and accepts the trustees so appointed as if made by the Contractor but only to the extent of Program Work as required by the PLA."

27.     The PLA incorporates the collective bargaining agreement between LOCAL 1 and the Building Restoration Contractors Association, Inc. ("BRCA") for the periods July 1, 2015 through June 30, 2019 and July 1, 2019 through June 30, 2023 for pointing cleaning and caulking work (the "CBAs").

28.     At all times relevant to the allegations of this Complaint, P&K and PATEL (collectively, the "EMPLOYER") and LOCAL 1, through the PLA, have been bound by the CBAs, governing the rates of pay and working conditions of individuals employed by EMPLOYER within the jurisdiction of LOCAL 1.

29.     EMPLOYER employed individuals to perform work that is covered under the PLA and the CBAs.

30.     The CBAs, including, but not limited to Articles I, IV, V, VI and VII, defines: (a) the employees covered by the CBAs; and (b) the work covered by the CBAs.

31.     Articles XIII, XIV, XV, and XVI of the CBAs require EMPLOYER to pay wage and wage supplements in the form of fringe benefit contributions to the FUNDS for all employees employed by EMPLOYER and covered by the CBAs from the first day of employment forward at the rates specified in Articles XIII and XVIII of said CBAs.

32.     Articles XIII, XIV and XVI of the CBAs require EMPLOYER to deduct and remit to LOCAL 1 a portion of its employees' wages in the form of dues and various assessments for all employees performing work covered by the CBAs at rates specified in said CBAs.

33.     Article XV, Section 4 of the CBAs requires EMPLOYER to submit monthly payroll remittance reports regardless of whether the employer performed work covered by the CBAs for the month.

34.     Article XV, Section 5 of the CBAs requires EMPLOYER to be bound by the written terms of the FUNDS' Trust Agreements and further agrees to be bound by all actions taken by the Trustees of the FUNDS pursuant to said Trust Agreements, as amended, and their respective Plans, as amended, and by all Bylaws, rules and resolutions adopted to regulate each of the FUNDS.

35.     Further, Article 11, Section 2(C) of the PLA states that "[t]he Contractors agree to be bound by the written terms of the legally established jointly trusteed Trust Agreements specifying the detailed basis on which payments are to be paid into, and benefits paid out of, such Trust Funds but only with regard to Program Work."

36.     Article XV, Section 7 of the CBAs requires EMPLOYER: 1) to turn over all books and records requested by the FUNDS' auditors pursuant to a periodic review and audit designed to ensure that all contributions owed pursuant to the CBAs are paid in full; and 2) to pay the costs of the audit if EMPLOYER is found delinquent.

37.     Article XV, Section 7 of the CBAs requires EMPLOYER to retain for a period of six (6) years payroll and related records necessary for a proper audit.

38.     Article XV, Section 7 of the CBAs entitles the FUNDS to simple interest at a rate of not less than ten percent (10%) per annum on all contributions owed by EMPLOYER.

39.     Article XV, Section 7 of the CBAs provides that the FUNDS are entitled to liquidated damages of twenty percent (20%), interest, costs, and attorneys' fees pursuant to the civil enforcement provisions of ERISA.

40.    Since on or about January 1, 2017 to date, EMPLOYER has failed to submit full payment of fringe benefit contributions to the FUNDS, and dues and assessments to LOCAL 1 for employees performing work covered by the PLA and CBAs.

**Labor and Material Payment Bond for NYCHA Contract No. BW1519745**

41.    P&K and the New York City Housing Authority ("NYCHA") entered into a contract to perform exterior restoration work under Contract No. BW1519745 (the "Contract") on various NYCHA projects pursuant to the NYCHA PLA.

42.    On behalf of P&K, PIIC issued a payment bond (no. PB12048700068) to NYCHA on October 13, 2015, through Michael Culnen, Attoney-in-Fact ("L&M BOND"), for $18,197,737.00, with respect to the Contract.

43.    The L&M BOND defines P&K as the "Principal" and PIIC as the "Surety."

44.    The L&M BOND states that the bond shall be for the benefit of any materialmen or laborer having a just claim, and that all persons who have performed labor, rendered services or furnished materials and supplies shall have a direct right of action against the Principal and the Surety.

45.    The L&M BOND states that the obligations under the bond remain in full force and effect unless the Principal promptly pays or causes to be paid all lawful claims for wages and compensation for labor performed and services rendered by all persons engaged in the prosecution of the work under the Contract and any extension or addition thereto, whether such persons be employees of the Principal or any such Subcontractor, including all persons so engaged who perform the work of laborers or mechanics at or in the vicinity of the site of the Project regardless of any contractual relationship between the Principal or such Subcontractors, or his or their successors or assigns, on the one hand and such laborers or mechanics on the other.

46.     The terms of the PLA and CBAs (which are also incorporated into the PLA) bind P&K to LOCAL 1 and the FUNDS and govern all amounts justly due to the employees of P&K performing work within the terms of the PLA.

47.     Pointing, cleaning, and caulking work on the projects under the Contract was performed by employees of P&K who are members of LOCAL 1 and/or participants in the FUNDS.

48.     PIIC is obligated under the L&M BOND, NY State Finance Law §137, NY Labor Law §220-g and the common law to pay "such sum or sums as may be justly due" under the PLA and the CBAs to employees represented by LOCAL 1 and/or participants in the FUNDS for work performed by said employees under the Contract.

49.     Under the terms of the L&M BOND, PIIC and P&K are jointly and severally liable for all claims under the L&M BOND. Further, upon information and belief, P&K agreed to indemnify PIIC for all claims against the L&M BOND.

50.     Pursuant to the L&M BOND, PIIC is required to pay all amounts due the FUNDS and LOCAL 1 to the extent P&K defaults in its obligation to pay wages and wage supplements for LOCAL 1 members and/or FUNDS' participants by P&K who performed work on the projects under the Contract.

**Second Labor and Material Bond**

51.     Upon information and belief, on behalf of P&K and/or DOE CONTRACTOR, DOE SURETY issued a labor and material payment bond with respect to work performed by DOE CONTRACTOR and/or P&K. ("SECOND L&M BOND").

52.     Upon information and belief, the SECOND L&M BOND defines P&K and/or DOE CONTRACTOR as the "Principal" and DOE SURETY as the "Surety."

53.     Upon information and belief, the SECOND L&M BOND states a claimant is defined as one having a direct contract with the Principal or with a Sub-contractor of the Principal for labor, material, or both, used or reasonably required for use in the performance of the contract, labor and material being construed to include that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental of equipment directly applicable to the contract.

54.     Upon information and belief, the SECOND L&M BOND states that the obligations under the bond remain in full force and effect unless the Principal promptly makes payment to all claimants for all labor and material used or reasonably required for use in the performance of the contract.

55.     The terms of the PLA and the CBAs bind P&K to LOCAL 1 and the FUNDS and govern all amounts justly due to the employees of P&K performing work within the terms of the PLA and CBAs.

56.     Pointing, cleaning, and caulking work was performed by employees of P&K who are members of LOCAL 1 and/or participants in the FUNDS.

57.     Upon information and belief, DOE SURETY is obligated under the SECOND L&M BOND, NY State Finance Law §137, NY Labor Law §220-g and the common law to pay "such sum or sums as may be justly due" under the PLA and CBAs to employees represented by LOCAL 1 and/or participants in the FUNDS for work performed by said employees.

58.     Upon information and belief, under the terms of the SECOND L&M BOND, DOE SURETY and P&K and/or DOE CONTRACTOR are jointly and severally liable for all claims under the SECOND L&M BOND. Further, upon information and belief, P&K and/or DOE CONTRACTOR agreed to indemnify DOE SURETY for all claims against the SECOND

L&M BOND.

59.     Upon information and belief, pursuant to the SECOND L&M BOND, DOE SURETY and DOE CONTRACTOR are required to pay all amounts due the FUNDS and LOCAL 1 to the extent P&K defaults in its obligation to pay wages and wage supplements for LOCAL 1 members and/or FUNDS' participants employed by P&K who performed work.

**Notification to the EMPLOYER**

60.     At the direction of the Trustees, the FUNDS' auditor, Kobgo Associates, Inc. ("Kobgo"), conducted an audit examination of P&K for the period January 1, 2017 through October 31, 2020.

61.     Kobgo issued an audit report of P&K dated February 18, 2022, showing a delinquency due to PLAINTIFFS by P&K for the period January 1, 2017 through October 31, 2020 in the amount of $107,798.27 plus audit costs in the amount of $11,350.00 for various NYCHA projects (the "Audit").

62.     The Audit contained scope limitations because Kobgo requested but was not provided, a complete set of weekly certified payroll records.

63.     By letter dated May 31, 2022, H&O, on behalf of the FUNDS, provided P&K with a copy of the Audit and noted the scope limitations. H&O demanded that P&K: (1) provide the missing certified payroll reports, and (2) either remit payment of the audit delinquency and audit costs in the total amount of $119,148.27 or submit written audit objections with supporting documentation.

64.     By email dated June 3, 2022, counsel for P&K requested an extension of time to review the Audit and submit objections. H&O granted counsel for P&K a 30-day extension to respond to the Audit.

65.     By email dated July 7, 2022, counsel for P&K submitted objections to the Audit and requested a further extension of time to produce the missing certified payroll records. H&O forwarded P&K's objections to Kobgo for review and granted P&K a further extension of time to produce the requested certified payroll records.

66.     Between August and December 2022, H&O and counsel for P&K discuss the status of the production of the requested records.

67.     By email dated December 6, 2022, counsel for P&K produces the requested certified payroll records, which H&O provided to Kobgo for review.

68.     By email dated January 4, 2023, counsel for P&K requested certain certified payroll records for P&K to review in connection with the Audit. H&O provided the requested records.

69.     By several phone calls during February and March 2023, and by emails dated March 9, 2023, April 10, 2023 and April 20, 2023, H&O requested updates as to the status of P&K's review of the records and response to the Audit. H&O received no further communication from P&K or its counsel.

70.     To date, P&K owes the FUNDS unpaid contributions, dues, and assessments pursuant to the Audit in the amount of $119,148.27 for the period January 1, 2017 through October 31, 2020. The amount of *contributions* that are owed to the FUNDS under the Audit is not less than $101,910.35 and the amount of *dues and assessments* that are owed to LOCAL 1 under the Audit is not less than $5,887.72.

## Violations of the AGREEMENT, LMRA, ERISA, Common Law, and NYS Lien Law

71.    In violation of the CBAs and ERISA, EMPLOYER has failed to remit delinquent contributions to the FUNDS in an amount not less than $101,910.35 for the period January 1, 2017 through October 31, 2020 and continuing through the pendency of this action.

72.    Pursuant to 29 U.S.C. § 1132(g)(2) and the CBAs, the FUNDS are entitled to recover: (a) all delinquent contributions in an amount not less than $101,910.35 for the period January 1, 2017 through October 31, 2020, and continuing throughout the pendency of this action; (b) interest at the rate of ten percent (10%) per annum on all delinquent contributions (as defined in the CBAs); (c) the greater of interest or liquidated damages of twenty percent (20%) on all delinquent contributions; (d) audit costs; (e) reasonable attorney's fees, costs, and expenses; (f) along with such other legal and equitable relief as the Court deems appropriate.

73.    In violation of the CBAs and the LMRA, EMPLOYER failed to remit dues and assessments to LOCAL 1 in an amount not less than $5,887.72 for the period January 1, 2017 through October 31, 2020 and continuing throughout the pendency of this action.

74.    Pursuant to 29 U.S.C. § 185(a), the CBAs and New York C.P.L.R. 5001 and 5004, LOCAL 1 is entitled to recover all delinquent dues and assessments in an amount not less than $5,887.72 for the period January 1, 2017 through October 31, 2020, and continuing throughout the pendency of this action, and prejudgment interest at nine percent (9%) per annum from the date due to the date paid.

## Fiduciary Claims against PATEL

75.    New York Lien Law, Article 3-A, Section 70 imposes a trust upon all funds dedicated to an improvement of a parcel of real property.

76.     New York Lien Law, Article 3-A also imposes a fiduciary duty on PATEL, to distribute the proceeds of the trust in accordance with the priority scheme set forth therein.

77.     Article XV, Section 7(e) of the CBAs binds, personally, the officers, partners, directors, stockholders and/or employees of P&K who are vested with authority and control over the submission of reports and/or the payments of contributions to the FUNDS, to submit the required reports and to pay the required contributions to the FUNDS.

78.     Article XV, Section 7(e) of the CBAs states specifically that "[t]he Employer recognizes that once the contributions become due and owing to the Fringe Benefit Funds, the contributions are assets of the Fringe Benefit Funds, and Employer acts as a fiduciary of those fund assets until they are paid over to the Fringe Benefit Funds."

79.     Article XV, Section 13 of the CBAs provides that "Employers whose contributions are due and owing to the Fringe Benefit Funds are fiduciaries of the Fringe Benefit Funds as to those contributions until the contributions are remitted to the Fringe Benefit Funds."

80.     Article XV, Section 5 of the CBAs binds EMPLOYER directly to the provisions of the Agreement and Declaration of Trust for each of the FUNDS (Welfare, Pension and Annuity, individually), as though the Employer had actually signed the individual documents, and further binds the Employer to all actions taken by the Trustees of each of the FUNDS pursuant to said Agreements and Declarations of Trust, as amended, and their respective Plans, as amended.

81.     Article 11, Section 2(C) of the PLA states that "[t]he Contractors agree to be bound by the written terms of the legally established jointly trusteed Trust Agreements specifying the detailed basis on which payments are to be paid into, and benefits paid out of, such Trust Funds but only with regard to Program Work."

82.     The Agreement and Declaration of Trust for each of the FUNDS provides, in relevant part, under Article II, Section 2 that: "The assets of the Trust Fund shall not revert or be used for or inure to the benefit of any of the Employers. . . ."

83.     The Agreement and Declaration of Trust for each of the FUNDS provides, in relevant part, under Article III, Section 3 that: "[a]ll contributions required from an Employer shall, after their due date and until their payment over in full by the Employer to the Trust Fund, be deemed to constitute a trust fund in the possession of such Employer; and said Employer shall be responsible and liable therefore as a fiduciary."

84.     The IPF Trust Agreement provides, in relevant part, under the Amendment of May 21, 2003 that: "[t]itle to all monies paid into and/or due and owing the Trust Fund shall be vested in and remain exclusively in the Trustees of the Fund."

85.     Upon information and belief, PATEL exercised dominion and control respecting the management or disposition of the FUNDS' plan assets (i.e. contributions) by acting as the President of P&K, by executing the NYCHA PLA Letter of Assent, and by signing checks and submitting certified payroll reports and employer remittance reports on behalf of P&K.

86.     Upon information and belief, PATEL diverted contributions due the FUNDS, to other entities and individuals, in order to avoid his fiduciary obligations.

87.     In violation of the CBAs and ERISA, PATEL, failed to remit all contributions to the FUNDS in the amount of $101,910.35 for the period January 1, 2017 through October 31, 2020.

88.     Pursuant to 29 U.S.C. § 1109(a) and the CBAs, the FUNDS are entitled to recover from PATEL the following: (a) all delinquent contributions in an amount not less than $101,910.35 for the period January 1, 2017 through October 31, 2020 and continuing throughout

the pendency of this action; (b) interest at ten percent (10%) per annum on all delinquent contributions (as defined in the CBAs); (c) audit costs; and (d) reasonable attorney's fees, costs and expenses.

89.     Pursuant to Article XIV of the CBAs, EMPLOYER must deduct union dues and assessments from employees' wages and was required to remit union dues and assessments on a monthly basis to LOCAL 1 for each member of LOCAL 1 in the employ of P&K.

90.     Upon information and belief, as the President of P&K, and by signing checks and submitting certified payroll reports and employer remittance reports on behalf of P&K, PATEL exercised dominion and control respecting the management or disposition of union dues and assessments that should have been held in trust by EMPLOYER and remitted to LOCAL 1.

91.     PATEL failed to remit union dues and assessments due and owing to LOCAL 1 for employees of P&K in the amount of $5,887.72 for the period January 1, 2017 through October 31, 2020.

92.     Upon information and belief, PATEL diverted dues and assessments due to LOCAL 1 to other entities and/or individuals in order to avoid his fiduciary obligations.

93.     PATEL interfered with plaintiff LOCAL 1's right to possess and control those dues and assessments under common law and Article 3-A of the New York Lien Law.

94.     Pursuant to common law and Article 3-A of the New York Lien Law, LOCAL 1 is entitled to recover from PATEL the union dues and assessments in the amount of $5,887.72 for the period January 1, 2017 through October 31, 2020 and continuing throughout the pendency of this action.

**AS AND FOR PLAINTIFF FUNDS' FIRST CLAIM**
**FOR RELIEF AGAINST EMPLOYER**

95.    Plaintiffs FUNDS repeat and reallege paragraphs "1" through "94" hereof with the same force and effect as if such were fully set forth herein.

96.    EMPLOYER's failure to submit contributions due and owing the FUNDS, as set forth in paragraphs "60" through "70" herein, constitutes a violation of 29 U.S.C. §§ 1132 and 1145.

97.    Accordingly, pursuant to 29 U.S.C. § 1132(g)(2), the FUNDS are entitled to recover the following: (a) all unpaid contributions in the amount of $101,910.35 for the period January 1, 2017 through October 31, 2020 and continuing throughout the pendency of this action; (b) simple interest at ten percent (10%) per annum on all unpaid contributions (as defined in the CBAs); (c) the greater of interest or liquidated damages in the amount of twenty percent (20%) on all unpaid contributions; (d) audit costs; (e) reasonable attorney's fees, expenses and costs of the action; and (f) such other legal and equitable relief as the Court deems appropriate.

**AS AND FOR PLAINTIFF FUNDS' SECOND CLAIM**
**FOR RELIEF AGAINST EMPLOYER**

98.    Plaintiff FUNDS repeat and reallege paragraphs "1" through "97" hereof with the same force and effect as if such were set forth here in full.

99.    EMPLOYER's failure to submit contributions due and owing to the FUNDS for the period January 1, 2017 through October 31, 2020 in the amount of $101,910.35, as set forth in paragraphs "60" through "70" herein, constitutes a violation of the CBAs and the LMRA.

100.    Accordingly, the CBAs entitle the FUNDS to receive from EMPLOYER the following: a) all unpaid contributions for the period January 1, 2017 through October 31, 2020

in the amount of $101,910.35 and continuing throughout the pendency of this action; b) audit costs; and c) full damages pursuant to ERISA, including liquidated damages of twenty percent (20%), interest at ten percent (10%) per annum (as defined in the CBAs), reasonable attorney's fees, expenses and costs of the action.

### AS AND FOR PLAINTIFF LOCAL 1'S CLAIM
### FOR RELIEF AGAINST EMPLOYER

101. Plaintiff LOCAL 1 repeats and realleges each and every allegation contained in paragraphs "1" through "100" hereof with the same force and effect as if fully set forth herein.

102. EMPLOYER's failure to remit dues and assessments to LOCAL 1 for the period January 1, 2017 through October 31, 2020 in the amount of $5,887.72, as set forth in paragraphs "60" through "70" herein, constitutes a violation of Article XIV of the CBAs and the LMRA.

103. Accordingly, EMPLOYER is liable to LOCAL 1 for the following: (a) unremitted dues and assessments for the period January 1, 2017 through October 31, 2020 in the amount of $5,887.72 and continuing throughout the pendency of this action; and (b) accrued prejudgment interest of nine percent (9%) per annum on said dues and assessments from the due date to the date of payment.

### AS AND FOR THE PLAINTIFF FUNDS' CLAIM
### FOR RELIEF AGAINST DEFENDANT PATEL AS FIDUCIARY

104. Plaintiff FUNDS repeat and reallege each and every allegation contained in paragraphs "1" through "103" of this Complaint as if fully set forth herein.

105. EMPLOYER is required to make contributions to the FUNDS.

106.    To the extent that PATEL is the President of P&K and signed the NYCHA PLA, checks, certified payroll records and employer remittance reports on behalf of P&K, PATEL constitutes a fiduciary under ERISA, 29 U.S.C. §1002(21)(A), with respect to the FUNDS, as he exercised authority or control respecting the management or disposition of the FUNDS' assets on behalf of P&K.

107.    Similarly, PATEL is a fiduciary under New York Lien Law, Article 3-A, Section 70, to the extent that they control/controlled the proceeds received by P&K for work performed in connection with an improvement of real property.

108.    PATEL's failure to submit contributions due and owing from P&K to the FUNDS, as set forth in paragraphs "60" through "70" herein, constitutes a violation of ERISA fiduciary duties, 29 U.S.C. § 1104, and the fiduciary duties imposed by New York Lien Law, Article 3-A.

109.    Pursuant to ERISA, 29 U.S.C. § 1109(a), PATEL is personally liable to make good any losses to the FUNDS resulting from each such breach and to restore any profits which would have been made through use of assets of the FUNDS.

110.    Accordingly, pursuant to 29 U.S.C. §§ 1109 and 1132(g)(1), the FUNDS are entitled to recover from PATEL personally: (a) all of P&K's unpaid contributions for the period January 1, 2017 through October 31, 2020 in the amount of $101,910.35 and continuing through the pendency of this action; (b) accrued prejudgment interest of ten percent (10%) per annum on said unpaid contributions (as defined in the CBAs); (c) audit costs; (d) reasonable attorney's fees, expenses and the cost of the action; and (e) such other legal and equitable relief as the Court deems appropriate.

## AS AND FOR PLAINTIFF LOCAL 1'S CLAIM FOR RELIEF
## AGAINST DEFENDANT PATEL AS FIDUCIARY

111.    Plaintiff LOCAL 1 repeats and realleges each and every allegation contained in paragraphs "1" through "110" hereof with the same force and effect as if fully set forth herein.

112.    In violation of the CBAs and the LMRA, PATEL failed to remit dues and assessments to LOCAL 1 for members employed by P&K for the period January 1, 2017 through October 31, 2020 in the amount of $5,887.72, as set forth in paragraphs "60" through "70" herein.

113.    Pursuant to Article XIV, Section 1(a) of the CBAs, P&K deducted union dues and assessments from employees' wages and was required to remit union dues and assessments on a monthly basis to LOCAL 1 for each member of LOCAL 1 in the employ of P&K.

114.    PATEL exercised dominion and control respecting the management or disposition of union dues and assessments as President of P&K and by signing checks, certified payroll records, and employer remittance reports on behalf of P&K.

115.    PATEL was obligated to hold dues and assessments in trust and remit them to LOCAL 1.

116.    PATEL interfered with plaintiff LOCAL 1's right to possess and control those dues and assessments.

117.    Pursuant to common law, PATEL is personally liable to make good any losses to LOCAL 1 from any breach of their duty to remit dues and assessments due and owing LOCAL 1.

118.    Accordingly, pursuant to common law, LOCAL 1 is entitled to recover from PATEL personally: (a) all unpaid dues and assessments found due and owing for the period January 1, 2017 through October 31, 2020 in the amount of $5,887.72, and continuing throughout

the pendency of this action; and (b) prejudgment interest on said dues and assessments from the date the cause of action accrued.

## AS AND FOR PLAINTIFFS FUNDS' AND LOCAL 1'S JOINT SUPPLEMENTAL CLAIM FOR RELIEF AGAINST DEFENDANT PIIC

119.    Plaintiffs FUNDS and LOCAL 1 repeat and reallege each and every allegation contained in paragraphs "1" through "118" hereof with the same force and effect as if such were fully set forth herein.

120.    Plaintiffs FUNDS' and LOCAL 1's joint supplemental claim for relief against PIIC is a state law claim based on the same underlying facts and circumstances as the ERISA claim against P&K contained herein.

121.    Pursuant to the L&M BOND, NY State Finance Law §137, and NY Labor Law §220-g, PIIC is liable "for such sum or sums as may be justly due" the FUNDS and LOCAL 1 pursuant to the CBAs to the extent that P&K refuses or fails to make payment to the FUNDS and LOCAL 1 for work performed.

122.    Accordingly, the FUNDS and LOCAL 1 are entitled to judgment against PIIC for all amounts found due and owing by P&K to the FUNDS and LOCAL 1 pertaining to work performed by P&K at the projects covered by the L&M BOND including interest, damages, audit costs, attorney's fees, costs and expenses.

## AS AND FOR PLAINTIFF FUNDS' AND LOCAL 1'S JOINT SUPPLEMENTAL CLAIM FOR RELIEF AGAINST DEFENDANT DOE CONTRACTOR

123.    Plaintiffs FUNDS and LOCAL 1 repeat and reallege each and every allegation contained in paragraphs "1" through "122" hereof with the same force and effect as if such were fully set forth herein.

124.    Plaintiffs FUNDS' and LOCAL 1's joint supplemental claim for relief against DOE CONTRACTOR is a state law claim based on the same underlying facts and circumstances as the ERISA claim against P&K contained herein.

125.    Upon information and belief, at all times herein mentioned, defendant DOE CONTRACTOR was the general contractor for work performed by P&K on various projects, whereby DOE CONTRACTOR entered into a contract with NYCHA and agreed to furnish labor and material for construction on the projects, in accordance with NYCHA's requirements and specifications.

126.    Upon information and belief, PIIC or DOE SURETY was, at all times herein mentioned, the surety for the projects pursuant to NYCHA's requirements and specifications, and furnished labor and material payment bonds to DOE CONTRACTOR covering the labor and materials to be furnished for work performed and to be performed at the projects.

127.    Under the SECOND L&M BOND, defendants PIIC or DOE SURETY and DOE CONTRACTOR are jointly and severally liable for all payments to all persons having a direct relationship with P&K, a sub-contractor of DOE CONTRACTOR, for labor, material and/or both to be furnished for work performed and to be performed at the projects pursuant to the terms of the SECOND L&M BOND.

128.    Pursuant to the SECOND L&M BOND, PIIC or DOE SURETY is liable "for such sum or sums as may be justly due" for claimant's work or labor to the extent that P&K refuses or fails to make payment to claimant for work performed by claimant.

129.    Accordingly, the FUNDS and LOCAL 1 are entitled to judgment against DOE CONTRACTOR for all amounts found due and owing by P&K to the FUNDS and LOCAL

1 pertaining to work performed by P&K at the projects covered by the SECOND L&M BOND including interest, damages, audit costs, attorney's fees, costs and expenses.

**AS AND FOR PLAINTIFFS FUNDS' AND LOCAL 1'S**
**JOINT SUPPLEMENTAL CLAIM FOR RELIEF**
**AGAINST DEFENDANT DOE SURETY**

130.    Plaintiffs FUNDS and LOCAL 1 repeat and reallege each and every allegation contained in paragraphs "1" through "129" hereof with the same force and effect as if such were fully set forth herein.

131.    Plaintiffs FUNDS' and LOCAL 1's joint supplemental claim for relief against DOE SURETY is a state law claim based on the same underlying facts and circumstances as the ERISA claim against P&K contained herein.

132.    Pursuant to the SECOND L&M BOND, NY State Finance Law §137, and NY Labor Law §220-g, DOE SURETY is liable "for such sum or sums as may be justly due" the FUNDS and LOCAL 1 pursuant to the AGREEMENT to the extent that P&K refuses or fails to make payment to the FUNDS and LOCAL 1 for work performed.

133.    Accordingly, the FUNDS and LOCAL 1 are entitled to judgment against DOE SURETY for all amounts found due and owing by P&K to the FUNDS and LOCAL 1 pertaining to work performed by P&K at the projects covered by the SECOND L&M BOND including interest, damages, audit costs, attorney's fees, costs and expenses.

**WHEREFORE**, Plaintiffs FUNDS and LOCAL 1 hereby request judgment in the total principal amount of $107,798.07, plus additional amounts pursuant to ERISA and the CBAs as follows:

    a.    against EMPLOYER, for all outstanding past due contributions to the FUNDS for the period January 1, 2017 through October 31, 2020 in the amount of $101,910.35, and continuing throughout the pendency of this action;

b.      against EMPLOYER, for payment of all outstanding dues and assessments to LOCAL 1 in the amount of $5,887.72 for the period January 1, 2017 through October 31, 2020, and continuing throughout the pendency of this action;

c.      against EMPLOYER, for interest of ten percent (10%) on all unpaid contributions found to be due and owing under the CBAs, in accordance with ERISA and the CBAs;

d.      against EMPLOYER, for accrued prejudgment interest on all unpaid dues and assessments found to be due and owing under the CBAs;

e.      against EMPLOYER, for the greater of additional interest of ten percent (10%) or statutory liquidated damages of twenty percent (20%) on all unpaid ERISA contributions found due and owing under the CBAs, in accordance with ERISA and the CBAs;

f.      against EMPLOYER, for all audit costs;

g.      against EMPLOYER, for reasonable attorney's fees, costs and expenses, in accordance with ERISA and the CBAs;

h.      against PATEL for all outstanding past due contributions to the FUNDS for the period January 1, 2017 through October 31, 2020 in the amount of $101,910.35, in accordance with ERISA;

i.      against PATEL, for payment of all outstanding dues and assessments to LOCAL 1 for the period January 1, 2017 through October 31, 2020 in the amount of $5,887.72;

j.      against PATEL, for accrued prejudgment interest on all outstanding past due contributions to the FUNDS;

k.      against PATEL, for accrued prejudgment interest on all outstanding dues and assessments to LOCAL 1;

l.      against PATEL, for audit costs, attorney's fees, costs and expenses from this action, in accordance with ERISA;

m.      against PIIC for all amounts due the FUNDS and LOCAL 1 pursuant to the CBAs to the extent P&K refuses or fails to make payment to the FUNDS and LOCAL 1 for employees who performed work at the projects covered by the L&M BOND;

n.      against DOE CONTRACTOR for all amounts due the FUNDS and LOCAL 1 pursuant to the CBAs to the extent P&K refuses or fails to make payment to the FUNDS and LOCAL 1 for employees who performed work at the projects covered by the SECOND L&M BOND;

o.    against DOE SURETY for all amounts due the FUNDS and LOCAL 1 pursuant to the CBAs to the extent P&K refuses or fails to make payment to the FUNDS and LOCAL 1 for employees who performed work at the projects covered by the SECOND L&M BOND; and

p.    for such other and further relief as the Court deems just and proper.

Dated: New York, New York
       September 9, 2023

Respectfully submitted,

HOLM & O'HARA LLP
*Attorneys for Plaintiffs*

By:    /s/ Katherine M. Morgan    
    Katherine M. Morgan (KM 8860)
    3 West 35th Street, 9th Floor
    New York, New York 10001
    (212) 682-2280
    k.morgan@hohlaw.com

*Index No.* **CV-6725** *Year* **2023**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

**JACK ARGILA, in his fiduciary capacity as a Trustee for the POINTERS, CLEANERS & CAULKERS WELFARE, PENSION & ANNUITY FUNDS, the BRICKLAYERS JOINT APPRENTICE TRAINING FUND, the LABOR MANAGEMENT FUND, and the PROMOTION FUND; and as President of the BRICKLAYERS AND ALLIED CRAFTWORKERS LOCAL UNION NO. 1, B.A.C.I.U., AFL-CIO; and the TRUSTEES of the BRICKLAYERS AND TROWEL TRADES INTERNATIONAL PENSION FUND and the INTERNATIONAL MASONRY INSTITUTE,**

**Plaintiffs,**

**- against –**

**P&K CONTRACTING, INC.; RAJENDRA PATEL; PHILADELPHIA INDEMNITY INSURANCE COMPANY; DOE GENERAL CONTRACTOR; and DOE SURETY COMPANY,**

**Defendants.**

---

# COMPLAINT

---

# HOLM & O'HARA LLP

*Attorneys for:*                  **Plaintiff(s)**

**3 West 35th Street, 9th Floor**
**New York, NY 10001**

---